Paolino Pellico, Plaintiff-Appellant, v. E. L. Ramm Company, a Corporation; Bernice E. Watts, Henry B. Ramm, Kent A. Ramm, and Clarence H. Ramm, Individually and d/b/a Ramm Cartage Company, a Partnership, Defendants-Appellees.

Gen. No. 49,762.

First District, First Division.

January 31, 1966.

Leo K. Wykell and Fishman and Fishman, of Chicago (Leo K. Wykell and Ronald S. Fishman, of counsel), for appellant.

Neil K. Quinn and Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an appeal by plaintiff in a personal injury action, in which judgment was entered on a verdict for defendants. Plaintiff complains of trial errors and seeks a new trial.

The principal errors asserted are: (1) "The trial court permitted a witness to impeach plaintiff by relating a purported conversation with plaintiff which was conducted through an interpreter, in a language the witness neither spoke nor understood. The allowance of this hearsay testimony was compounded when the court refused to permit the interpreter to testify in rebuttal as to the actual conversation." (2) Misconduct of the defendants

by "interjecting the question of an Industrial Commission hearing, both through testimony and again in argument." (3) Erroneous instructions.

On May 23, 1960, plaintiff, then 57 years old, was working for the Palumbo Excavating Company as a general laborer, laying sewer pipe. He had come from Sicily to the United States in 1956 and could neither speak nor understand English. Palumbo Excavating Company was engaged in constructing part of the Congress Expressway, and plaintiff was injured when he was struck by the rear end of a truck which was backing up in a construction yard.

Defendant, Bernice Watts, a truck driver working for the Ramm Cartage Company, a partnership, was driving a 2-ton flatbed truck loaded with 350 catch basin blocks weighing approximately $8\frac{1}{2}$ tons. He arrived at the construction yard about 1:00 p. m. and asked the foreman for someone to assist him. The foreman told the plaintiff to go with the driver and unload the truck next to a pile of pipe.

The truck had to be backed up about 30 feet, and plaintiff told Watts, "Speak no English." Watts pointed to his intended unloading area. Plaintiff walked to the rear of the truck to hand-signal Watts as the truck was backed up. Watts was using both his rearview mirrors, located on each side of the truck's cab, to see plaintiff signal and also to watch the area over which he was backing, rough, bumpy dirt and debris.

The principal dispute arises over the location of plaintiff as he directed the truck backwards and if the truck suddenly turned or lurched. There were no eyewitnesses. Plaintiff testified he was on the left side, about four feet to the side and fourteen feet to the rear, and started to walk backwards with the truck, which at first moved slowly, then the truck turned suddenly and quickly lurched backwards, and the left rear of the truck struck him and knocked him down.

324

Defendant Watts testified that plaintiff was at the right rear corner of the truck, signalling to him through the right rearview mirror, and that he was backing up while "riding" the clutch so that it was only halfway out, his right foot on the gas and his left foot controlling the clutch. Watts stated that as he drove backwards, he went over a small pile of bricks, and the truck jolted slightly. The truck did not lurch or "spurt" before striking plaintiff. Watts said his first indication that plaintiff was injured was when another person yelled at him to move forward, which he did immediately. He left his vehicle, walked to the rear and found plaintiff half sitting and half lying on some pipe.

Plaintiff was removed by police officers Lavery and Christy to the West Suburban Hospital and both testified at the trial. An interpreter was brought to the hospital and Officer Lavery said the interpreter spoke a different dialect, so no statement could be taken from plaintiff. Officer Christy did not know the interpreter nor whether he spoke the same dialect, nor if he could understand plaintiff. Over objection, Officer Christy was permitted to testify, "The interpreter said that the injured man had told him that he was on the west side of the truck, directing the truck back, and that he was afraid the truck driver was going to hit some tile or concrete on the other side. He ran on the other side of the truck, or attempted to run on the other side of the truck, to be sure he was clear, and was caught and pinned back."

During the rebuttal phase of the trial, the trial court refused to permit interpreter DeFrancisco, referred to by Officer Christy, to testify concerning the alleged statement made by plaintiff at the hospital. Plaintiff then made an offer of proof that the interpreter would have testified that "there was only one police officer present in the hospital when he spoke to Mr. Pellico about the manner in which the accident occurred. Mr. Pellico told him, in the Italian language, that the truck jumped

at him. He was behind the truck and that the truck hit him and injured him. That was given to him by Mr. Pellico. That was all the information given by the witness DeFrancisco to the Police Department."

■ Considered first is the contention of plaintiff that the testimony of Officer Christy as to what the interpreter said at the hospital was hearsay, and only the interpreter may be called to testify as to what was said by plaintiff.

Defendants contend, "It was not necessary to call the interpreter to prove admissions of a party or to impeach the testimony of the plaintiff's witness who was present when the admissions were made. The testimony complained of was not sought to be stricken nor was there a request to have the jury instructed to disregard it, so as to preserve the point for review."

We have examined the authorities of defendants, and we are not persuaded they apply here. The rule to be used here is set forth in Wigmore on Evidence, § 812 (3rd Ed 1940):

"(1) By the Hearsay rule, every witness must be subject to the opportunity of cross-examination; an interpreter is a witness to the other witness' words; hence, the interpreter's report of the other witness' testimony cannot be used at another trial without *calling or accounting for the interpreter* (post, § 1810).

"Whether a party is *entitled* to the interpretation of the *testimony against him* involves also the right of cross-examination . . . .

"(3) A person conversing with a third person through an interpreter is *not qualified* to testify to the other person's statements, because he knows them only through the hearsay of the interpreter. Ordinarily, therefore, the third person's words can-

not be proved by anyone except the interpreter himself . . . ."

See, also, ILP, Evidence § 132; Szczech v. Chicago City R. Co., 157 Ill App 150 (1910).

██ However, defendants contend that, considered as admissions of the plaintiff, the testimony of the interpreter was not necessary because the plaintiff is a party. Cited in support is Wigmore on Evidence, § 668 (8), where it is said:

> "Conversations through an Interpreter. When A speaks with B through an interpreter because of A's ignorance of B's language, A cannot of his own hearing know what B said; he depends on the interpreter's report. Here no exception has been recognized to the general rule (though it might well have been). The witness A is allowed to testify only to what he heard from the interpreter, and the interpreter must be called to testify to what B said to him.
>
> "If, however, B is a *party*, whose *admissions* can be used, then the interpreter is to be regarded as B's agent, and the agent's statements on B's behalf (being in a language understood by the witness) are usable as B's admissions."

We agree with plaintiff that this rule should not be applied here, because the record indicates that the police officers asked DeFrancisco to interpret for them, and plaintiff did not participate in the selection of the interpreter. Therefore, the interpreter cannot be considered as plaintiff's agent. As said in People v. Chin Sing, 242 NY 419, 152 NE 248 (1926):

> "Of course the evidence was hearsay . . . and, with two possible exceptions the only cases cited by the people to sustain the admission of such evidence are cases where the interpreter had been selected

by common consent of the parties endeavoring to converse or by the party against whom the statements of the interpreter were offered in evidence, and in such cases it was naturally held that the party against whom the statements were offered in evidence had made the interpreter his agent, and therefore within the ordinary rules of principal and agent was bound by his statements which could be proved by a third party. As has been pointed out, that is not at all this case."

█ Based upon the foregoing guidelines, we hold that it was error to overrule plaintiff's objection to this part of Officer Christy's testimony. Defendants' authorities do not support their assertion that in order to preserve the point for review, after having objected to the testimony, it was necessary for plaintiff to move to strike the answer or have the jury instructed to disregard it.

█ We further agree with plaintiff that it was error for the trial court to sustain defendants' objection to the testimony of the interpreter on rebuttal. Plaintiff had a right to rebut, explain or contradict the affirmative evidence offered by Officer Christy to show plaintiff's lack of due care. The rule is stated in Loftus v. Loftus, 134 Ill App 360, 362 (1907):

"Permitting a plaintiff to introduce evidence of an affirmative matter in rebuttal, where such evidence might properly have been offered in chief, is largely discretionary with the trial court, but where a defendant introduces evidence of an affirmative matter in defense or justification, the plaintiff, as a matter of right, is entitled to introduce evidence in rebuttal as to such affirmative matter."

See, also, 3A Nichols Illinois Civil Practice 84, Rebuttal § 3296.

328

■■ We consider the foregoing errors to be sufficiently substantial and prejudicial to plaintiff's case to warrant a new trial. It is unnecessary to examine at length the other areas of error asserted by plaintiff. Undoubtedly they will not reoccur on retrial. Direct or indirect references to "Industrial Commission" proceedings during the trial of third party actions are improper and should be excluded (Bryntesen v. Carroll Const. Co., 27 Ill2d 566, 190 NE2d 315 (1963), which affirmed 36 Ill App2d 167, 184 NE2d 129) and may be prejudicial error. IPI instructions on issues, burden of proof, credibility of witnesses and damages, shall be used in accordance with Supreme Court Rule 25–1.

For the reasons given, the judgment is reversed and the cause remanded for a new trial in accordance with the views expressed herein.

Reversed and remanded.

KLUCZYNSKI, P. J. and BURMAN, J., concur.