JANE KURRACK, Indiv. and as Adm'r of the Estate of John Kurrack, Deceased, Plaintiff-Appellant, v. AMERICAN DISTRICT TELEGRAPH COMPANY, Defendant-Appellee.

First District (5th Division) No. 1—92—2521

Opinion filed August 13, 1993.

Raymond A. Fylstra and Deborah I. Prawiec, both of Joyce & Kubasiak, P.C., of Chicago, for appellant.

Edward J. McCambridge, William F. Mahoney, and Timothy L. Krippner, all of Segal, McCambridge, Singer & Mahoney, Ltd., of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Jane Kurrack, individually and as administrator of the estate of her late husband, John Kurrack (Kurrack), appeals after a jury entered a verdict in favor of defendant, American District Telegraph Company (ADT), in a negligence and strict product liability action related to asbestos exposure.

The pertinent facts are as follows.

John Kurrack was born in 1923. In 1953 he began working in a jewelry store owned by Charles Kolb, a distant relative. In 1958, upon Kolb's death, Kurrack purchased the jewelry store and operated it until his own death in August 1985.

Kurrack, who was a one-pack-per-day smoker, began suffering from emphysema around 1982. In 1984 he began experiencing greater difficulty breathing, and in 1985, he sought medical attention for this problem. He underwent a series of tests and, in June 1985, he was diagnosed with malignant mesothelioma, which is cancer of the mesothelium tissue of the lungs. Kurrack underwent radiation therapy and treatment, but succumbed to the disease in August 1985.

Because mesothelioma is almost exclusively associated with exposure to asbestos, Kurrack's doctors questioned him concerning exposure to asbestos. Kurrack was unaware that he had ever been exposed to asbestos and so informed his doctors. It was later discovered, however, that the alarm system of the walk-in vault inside the jewelry store Kurrack owned and operated at 7 West Madison Street in Chicago was covered with an asbestos-paper material. The alarm system, which was installed by ADT in 1953, secured the vault where Kurrack stored his merchandise, ledgers and records. This alarm system, which surrounded the vault, consisted of layers of electrified foil set in tar (asphaltum). The layers of electrified foil were then covered by a layer of paper which had been treated with an asbestos fiber known as chrysotile. The asbestos paper was then coated with a sealant.

The alarm system was not sold to the jewelry store by ADT. Rather, ADT installed the system and then maintained and serviced it for the jewelry store pursuant to a service contract.

In October 1985 plaintiff brought action against ADT. In her five-count, third-amended complaint plaintiff sought recovery under the Wrongful Death Act (Ill. Rev. Stat. 1989, ch. 70, pars. 1, 2) and the Illinois Survival Act (Ill. Rev. Stat. 1989, ch. 110½, par. 27—6) based upon ADT's negligence (counts I and II) and strict liability (counts III and IV). In count V plaintiff sought recovery for loss of consortium.

After a lengthy trial in which several experts testified, the jury rendered a verdict against plaintiff and in favor of ADT and the trial court entered judgment in accordance with the verdict. Plaintiff filed a post trial motion for judgment notwithstanding the verdict and for a new trial. Both motions were denied.

Plaintiff now brings this timely appeal, requesting a reversal of the jury verdict or a remand for new trial. For reasons that follow, we affirm the judgment of the lower court.

The issue in this appeal is not whether asbestos caused Kurrack's condition and eventual death, but whether rulings made by the trial court concerning the admission of certain evidence and instructions to the jury so prejudiced the plaintiff that she was deprived of a fair trial. Plaintiff charges that no less than 13 errors occurred in relation to the trial in this case. Rather than reciting the alleged errors here, we will address them individually.

In the first issue raised on appeal, plaintiff contends that instruction 17(a), which was given to the jury, merged her strict liability claims into the negligence claims, thereby removing from the jury's consideration one half of the case against defendant. We disagree.

In both of plaintiff's claims based upon strict liability, *i.e.*, counts III and IV of the complaint, it was alleged:

"The asbestos insulation or covering installed in Charles Kolb Jeweler's walk-in safe in 1953 was not reasonably safe for use by Kurrack for one or more of all of the following reasons:

(a) the security alarm system insulation or covering was not reasonably safe for use in the walk-in vault;

(b) ADT failed to warn Kurrack that exposure to or physical contact with the asbestos used in the security alarm system could result in the contracting of asbestosis or certain other forms of cancer;

(c) ADT failed to label the security alarm system insulation or covering as containing asbestos;

(d) ADT failed to warn Kurrack of the need to wear protective garments when in physical contact with or close proximity to the security alarm system insulation or covering;

(e) ADT failed to remove the security alarm system insulation or covering and replace it with a non-toxic substance."

Instruction 17(a), given to the jury regarding the strict liability claims, read as follows:

"In Counts III and IV, plaintiff claims that John Kurrack was injured through exposure to asbestos in the vault and that at the time the asbestos left the control of the defendant there existed a condition which made the asbestos unreasonably dangerous in one or more of the following respects:

(a) Failing to warn John Kurrack of the unreasonably dangerous condition of the asbestos and failing to label the asbestos in the walk-in vault after it knew or should have known of the dangers posed by the asbestos;

(b) Failing to warn John Kurrack of the need to wear protective garments when in physical contact with or close proximity to the asbestos;

(c) Failing to inspect, maintain and remove the asbestos and replace it with a non-toxic substitute."

Plaintiff contends that this instruction was improper because it failed to instruct the jury that it could find liability based solely on the fact that the asbestos was unreasonably dangerous regardless of whether ADT knew of the dangers of the insulation in its alarm system. However, because such an instruction would not have been a correct statement of the law in this case, the trial court properly disallowed an instruction of this sort.

Illinois case law provides that a strict liability in tort action may be premised upon either (1) the defendant's failure to warn of a product's dangerous propensities or (2) upon a defective condition inherent in the product which makes it unreasonably dangerous. (*Woodill v. Parke Davis & Co.* (1980), 79 Ill. 2d 26, 402 N.E.2d 194.) If the claim is premised upon a defect in the product, the plaintiff must plead and prove that his injuries stemmed from the unreasonably dangerous or defective condition of the product and that the condition existed at the time the product left the manufacturer's control. *Schultz v. Hennessy Industries, Inc.* (1991), 222 Ill. App. 3d 532, 540, 584 N.E.2d 235.

If, however, the claim is premised upon a failure to warn, liability will be imposed only if the injury was foreseeable. (*Schultz v. Hennessey Industries, Inc.*, 222 Ill. App. 3d at 541.) Knowledge is a key ele-

ment in a failure-to-warn strict liability action, and plaintiff must plead and prove that the defendant seller or manufacturer knew or should have known of the dangers posed by its product and that the dangerous aspect of the product caused the injury. *Woodill v. Parke Davis & Co.*, 79 Ill. 2d at 35; *Kempes v. Dunlop Tire & Rubber Corp.* (1989), 192 Ill. App. 3d 209, 218, 548 N.E.2d 644.

In the present case plaintiff contends that she made out a case for strict liability based upon an inherent defect and, therefore, ADT's knowledge was irrelevant. However, in plaintiff's complaint it can readily be seen that no allegation of defect was ever made. Plaintiff relies on the fact that the product contained asbestos and that asbestos has been found to be an unreasonably dangerous product. (See *Hammond v. North American Asbestos Corp.* (1982), 105 Ill. App. 3d 1033, 435 N.E.2d 540 (raw asbestos is a "product" which is unreasonably dangerous).) Plaintiff then claims that the evidence showed that (1) asbestos is unreasonably dangerous, (2) ADT installed asbestos in the vault, and (3) asbestos was the proximate cause of Kurrack's injury.

However, as plaintiff concedes, a manufacturer or distributor of a product will only be held strictly liable if it can be shown that the product left the defendant's control in an unreasonably unsafe or defective condition (*Cunningham v. MacNeal Memorial Hospital* (1970), 47 Ill. 2d 443, 266 N.E.2d 897), and in this case the product that left ADT's control was not raw asbestos since ADT did not install raw asbestos in the vault. The product was a paper material impregnated with an asbestos fiber (chrysotile). Therefore, it was encumbent upon plaintiff to demonstrate in what way this asbestos-containing product used by ADT as a lining in the vault alarm system was inherently dangerous or defective. This is what plaintiff failed to do.

Plaintiff's position appears to be that the asbestos-paper insulation was inherently dangerous merely because it contained asbestos. However, we do not believe that this assertion may be upheld. Plaintiff's own expert indicated that it is "friable" asbestos that is dangerous. Therefore, an asbestos-containing product becomes dangerous only when it can be shown that the asbestos readily leaves the product and is released as particles or fibers into the air.

As stated in *Board of Education v. A, C & S, Inc.* (1989), 131 Ill. 2d 428, 445, 546 N.E.2d 580, "[t]he nature of the defect in these ACMs [asbestos containing materials] is the asbestos fibers, which are toxic and which, it has been determined, may, in certain circumstances, be harmful." We believe that the key phrase in the quote above is "in certain circumstances" because it suggests that all ACMs

are not inherently dangerous, but only those ACM products which emit significant amounts of friable asbestos.

■ In this case there was no indication that the asbestos-paper insulation was defective in that it was improperly made or that the asbestos in the paper material was poorly bonded so that the asbestos paper released "friable" asbestos and thus was defective and dangerous to the consumer. We realize that plaintiff did present some evidence that the product had begun to decompose in certain areas of the vault due to deterioration and that, as a result, there was some friable asbestos present in the vault. However, testing of air samples from the vault showed that the levels were far below acceptable levels. From this evidence the court was free to decide that, as a matter of law, plaintiff failed to show that the asbestos-paper product used by ADT for lining the alarm system left ADT's control in an unreasonably unsafe condition and that the insulating material was not, itself, inherently dangerous.

Plaintiff also wrongly asserts that the insulating material "was unreasonably dangerous in that it caused cancer." The fact that an injury has occurred, in and of itself, is insufficient to show the existence of a product defect. (*Schultz v. Hennessey Industries, Inc.*, 222 Ill. App. 3d at 540.) Consequently, we must conclude that plaintiff failed to make out a case for strict liability based upon an inherent defect in the product. As a result, plaintiff was not entitled to an instruction on this theory. *Ferry v. Checker Taxi Co.* (1987), 165 Ill. App. 3d 744, 520 N.E.2d 733.

We note, too, that plaintiff did not offer an instruction which would have allowed the jury to determine whether the product in this case (the ACM or asbestos-related insulation) was defective because it contaminated the workplace with friable asbestos. Plaintiff wanted the jury to be instructed that the insulating material was unreasonably unsafe merely because it contained asbestos. But, as we just indicated, this would have been an incorrect statement and the trial court did not err in refusing to so instruct the jury.

It is clear that the only strict liability claims which remained in the case were those premised upon a failure to warn. Correspondingly, it was encumbent upon plaintiff to plead and prove that ADT knew or should have known that the ACM, or asbestos-containing material used as insulation in its alarm system, posed a danger. The knowledge element was properly included in the jury instruction.

■ For the same reason, it was not improper for the trial court to have submitted the special interrogatories to the jury. The interrogatories submitted in this case were:

"(1) Did ADT have actual knowledge that the use of asbestos paper in a vault could cause an asbestos related disease?

(2) Should ADT have known that the use of asbestos paper in a vault could cause an asbestos related disease?"

Plaintiff contends that these interrogatories confused or misled the jury because they indicated that "the relevant product was asbestos paper and not asbestos" when plaintiff never made a distinction between asbestos paper and asbestos at trial.

While it is true that plaintiff has made a valiant attempt to blur the distinction between asbestos and the asbestos-containing product involved in this case, it does not change the fact that the evidence presented at trial did not show that the vault was insulated with asbestos, but that the alarm system was encased in a paper material which contained an asbestos fiber. Thus, asbestos paper was, in fact, the relevant product.

Furthermore, as plaintiff correctly notes, interrogatories are properly given when they can serve as a check on the general verdict. (*Saldana v. Wirtz Cartage Co.* (1977), 55 Ill. App. 3d 440, 370 N.E.2d 1131.) The rationale is that the jury will more clearly comprehend a particularized question rather than a composite of all the questions in the case. Since ADT's knowledge of the hazards associated with the asbestos product it used in its alarm system was a key element of both the negligence and strict liability claims, the submission of the above-cited interrogatories was a proper check on the general verdict. The trial court did not err by submitting these interrogatories to the jury.

In the next issue raised on appeal plaintiff contends that she was improperly denied the opportunity to present rebuttal testimony at trial. Plaintiff contends that, during the defense, (a) ADT's experts introduced the concept of "fiber year thresholds," (b) suggested that Kurrack's mesothelioma was idiopathic (arising spontaneously or for no known reason) or brought on by some other causative agent, and (c) described recommended maintenance procedures for the vault. Plaintiff contends that this evidence constituted "new issues" that were "akin to affirmative defenses" so that she should have been entitled to present rebuttal evidence as a matter of right. (See *Pellico v. E.L. Ramm Co.* (1966), 68 Ill. App. 2d 322, 216 N.E.2d 258 (plaintiff is entitled as a matter of right to rebut affirmative defenses).) Plaintiff concludes that reversal is required because she was prevented from presenting rebuttal testimony, which undercut her position and severely prejudiced her case.

Also, while admitting that the admission of rebuttal testimony is otherwise left to the discretion of the trial court (*Hall v. Northwestern University Medical Clinics* (1987), 152 Ill. App. 3d 716, 504 N.E.2d 781), plaintiff suggests that the denial of rebuttal testimony in this case was an abuse of discretion because it was motivated by the court's desire to bring the proceedings to a hasty close in light of an upcoming holiday.

Defendant strongly disagrees with plaintiff's assertions and argues that the trial court's decision to disallow rebuttal testimony, wholly unrelated to any upcoming holiday, was a sound exercise of the trial court's discretion based upon the fact that the evidence proffered by plaintiff was repetitive and would not have added anything to the case. We agree.

First of all, we find absolutely no evidence that the trial court's refusal to allow plaintiff to present rebuttal evidence was in any way motivated by time constraints associated with an approaching holiday. The record shows that the trial court made no reference to an upcoming holiday when deciding whether to grant plaintiff the opportunity to present rebuttal evidence and plaintiff did not object on this basis at the time the court denied rebuttal. What the record does show is that plaintiff's attorney informed the trial court of the evidence that he intended to present on rebuttal and the trial court ruled that it was not proper rebuttal evidence. Therefore, this court will not address plaintiff's speculation as to the lower court's motivation and only review the ruling for its correctness.

On the merits of this issue, after reviewing the record and considering the remarks made by plaintiff's attorney concerning the rebuttal evidence he intended to present, we find that plaintiff was not entitled to rebuttal as of right and that the trial court did not abuse its discretion in refusing to allow rebuttal evidence.

■ First, plaintiff contends that she was prejudiced by the trial court's refusal to allow her to recall her expert, Dr. Carnow, to refute the testimony of ADT's experts concerning the "fiber year" theory and alternative causes of mesothelioma, which were new issues raised by defense. However, plaintiff does not specify in what way she was prejudiced by the court's exclusion of rebuttal testimony, nor does plaintiff indicate the exact nature of the rebuttal testimony she intended to present which would not have been repetitious of earlier testimony.

Based upon our review of the record, it is clear that ADT's expert, Dr. Sawyer, in discussing the concept of "fiber years," was merely revisiting the concept of dose-response, which plaintiff's ex-

pert, Dr. Carnow, already introduced and testified to at length. With regard to ADT's evidence as to other causes of mesothelioma, beyond the fact that plaintiff cross-examined ADT's expert who admitted that there was no indication that Kurrack had exposure to these other causative agents, our review of the record reveals that Dr. Carnow testified on direct examination that, in his experience, the only cause of mesothelioma was exposure to asbestos and that Kurrack's cigarette smoking was wholly unrelated to the mesothelioma. Also, Jane Kurrack testified that her husband had not been exposed to any other sources of asbestos. Therefore, we do not see how the refusal to allow rebuttal testimony to refute ADT's testimony regarding possible alternative causes of the mesothelioma prejudiced plaintiff's case.

Just because different experts draw different conclusions from the same evidence does not mean that new issues were raised. (See *Levin v. Welsh Brothers Motor Service, Inc.* (1987), 164 Ill. App. 3d 640, 657, 518 N.E.2d 205.) We hardly think that defendant's evidence in contradiction of plaintiff's evidence of causation constituted new issues. Consequently, we see no reason why plaintiff should have been given a second chance to reassert her own theories of causation. There must be some check on the amount of evidence that may be presented via experts, otherwise trials would never end.

■ Plaintiff next contends that the trial court denied her the opportunity to testify in rebuttal that ADT's maintenance of the vault did not comport with the recommended procedures testified to by ADT's experts. However, after reviewing the record we find that this is not so. Plaintiff's attorney stated that he wanted to present rebuttal testimony "that UL did not ever come out and inspect this vault." The court ruled that this was improper rebuttal since there was no evidence by ADT that UL had ever inspected the vault. We find no abuse of discretion in this ruling.

For all these reasons, we must agree that the trial court did not abuse its discretion by refusing to allow the proffered rebuttal testimony and we find no grounds upon which to reverse the decision.

■ Of the remaining issues on appeal, four deal with the admission of evidence. In two of these issues plaintiff charges that certain evidence given by ADT's experts was hearsay and should have been excluded. The first of these issues deals with the testimony of Dr. Greenberg. Plaintiff complains that the trial court erroneously allowed the jury to hear the evidence deposition of Dr. Greenberg, who testified concerning the results of certain lung tissue analyses which were performed by a consultant, Dr. Dodson. Plaintiff argues that Dr. Greenberg, who had not performed the tests, testified as if the fiber

burden data was admitted for its truth and, thus, his testimony was inadmissible hearsay. We disagree.

As plaintiff acknowledges, in *Wilson v. Clark* (1981), 84 Ill. 2d 186, 417 N.E.2d 1322, our Illinois Supreme Court adopted Federal Rules of Evidence 703 and 705, allowing experts to give opinion testimony based upon information which has not been admitted into evidence, as long as the facts relied upon are sufficiently reliable. In determining whether the underlying data are sufficiently reliable, the trial court, in the exercise of its discretion, may consider whether the underlying facts or data which formed the basis of the expert's opinion are of the type reasonably relied upon by experts in the particular field. The trial court's determination on this matter will not be overturned absent a showing of an abuse of discretion. (*City of Chicago v. Anthony* (1990), 136 Ill. 2d 169, 185-86, 554 N.E.2d 1381.) If the trial court determines that the underlying data are of the sort that are typically relied upon by experts in forming opinions and reasonably reliable, the expert may reveal the data, not as substantive evidence, but for the limited purpose of explaining his opinion. *City of Chicago*, 136 Ill. 2d at 185.

In this case Dr. Greenberg, a professor of pathology and pulmonary medicine at Baylor College of Medicine, testified during his deposition that he selected Dr. Dodson, who was well known and respected in the fields of cell biology and environmental sciences, to perform certain fiber burden tests on samples of Kurrack's lung tissue. Dr. Greenberg testified that this type of analysis was the kind typically and customarily relied upon by pathologists in forming their opinions and that, in this case, he utilized Dr. Dodson's analyses of the tissue samples to determine the asbestos fiber burden in Kurrack's lungs. Based upon this information, Dr. Greenberg formed an opinion that Kurrack's asbestos exposure was insufficient to have been the cause of his mesothelioma.

We find that Dr. Greenberg's testimony fell squarely within the exception created by Federal Rules 703 and 705 adopted in *Wilson*. The fact that the analysis was done in contemplation of litigation is not controlling. (See *People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 574 N.E.2d 1345; *Martin v. McDonald's Corp.* (1991), 213 Ill. App. 3d 487, 572 N.E.2d 1073.) The key element is whether the information relied upon by the expert is reliable and reliability stems from the fact that the data are of the sort customarily relied upon in forming opinions of the type being rendered. (*Dugan v. Weber* (1988), 175 Ill. App. 3d 1088, 530 N.E.2d 1007.) We believe that the lung tissue analysis in this case can be likened to an X ray or other laboratory analysis

which is typically performed by a technician or laboratory scientist other than the testifying expert. Therefore, the weight of the evidence does not indicate that the trial court abused its discretion in finding these underlying data were sufficiently reliable to have allowed Dr. Greenburg to refer to them when testifying, for the limited purpose of explaining the basis for his opinion.

We note, too, that Dr. Greenberg did not give detailed information concerning the analyses themselves, nor did he spend undue time relating the information that was taken from the analyses. Dr. Greenberg merely indicated that by utilizing the results of the tests performed by Dr. Dodson, he was able to formulate the opinion, with a reasonable degree of medical certainty, that the cause of Kurrack's mesothelioma was unrelated to his asbestos exposure. We disagree with plaintiff's characterization that the test results were admitted as substantive evidence.

Furthermore, even if we found that the lung tissue analysis testified to by Dr. Greenberg was hearsay, the error in admitting this evidence was harmless beyond a reasonable doubt. This is because plaintiff presented her own expert, Dr. Gordon, who testified at trial regarding his analysis of lung tissue samples. We find it interesting to note that Dr. Gordon did not prepare the tissue samples either, but instead, had his technician perform this task. Furthermore, Dr. Gordon conceded at trial that the analysis of his tissue samples was "unbelievably" and substantially similar to the results of the lung tissue fiber burden tests performed by Dr. Dodson. Therefore, even if Dr. Dodson's results were improperly admitted, it was harmless error.

■ Next, plaintiff contends that the trial court erroneously allowed ADT's expert, Donald McFee, to testify concerning the results of air sample analyses performed by its consultant, Clayton Environmental Corporation. Again, plaintiff complains that McFee's testimony concerning the analyses placed the data into the record as substantive evidence, despite the fact that McFee did not perform the tests himself, making his testimony concerning these analyses inadmissible hearsay.

The record reveals that McFee testified that he was the executive vice-president and technical director of a company called Occusafe, which is in the business of identifying, evaluating and rectifying problems associated with occupational safety, health and environment. McFee also testified that he was an engineer, a certified industrial hygienist and a product safety manager. Additionally, he was accredited by the Environmental Protection Agency (EPA) as a building inspector with respect to regulations under the Asbestos Hazard Emergency

Response Act (AHERA). He testified that in this capacity he had become familiar with the Occupational Safety and Health Administration (OSHA) standards regulating asbestos in the workplace. Furthermore, his company, Occusafe, has been employed on numerous occasions to evaluate air samplings in buildings.

Finally, McFee testified that Occusafe gathered air samples from the vault and other areas in and around the Kolb Jewelry store and that these samples were then microscopically analyzed by Clayton Environmental Consultants laboratory. The results were then incorporated in a report Occusafe prepared concerning the level of asbestos present in Kolb's Jewelry store and vault. The report was admitted as defendant's exhibit 18.

We find that under the above-related circumstances, the results of the air sampling analysis performed by Clayton Environmental Consultants were not admitted for their truth, but were a disclosure of the underlying data which formed the basis for McFee's opinion that the level of asbestos present in the air inside the Kolb Jewelry store and vault was within OSHA limits. As explained in the previous issue, underlying data are admissible for that purpose, as long as they are deemed reliable. We find no abuse of discretion in the trial court's decision to admit McFee's testimony and defendant's exhibit 18, which contained this information. McFee's testimony revealed that the data were sufficiently reliable and reasonably relied upon by McFee in forming his expert opinion.

Furthermore, plaintiff's own expert, Dr. Carnow, testified regarding air samplings done by his company. He admitted that the results of these tests indicated that the level of asbestos fibers present in and around the vault of the Kolb Jewelry store, although greater than the amounts reported by ADT's expert, was far below the OSHA standards and that the area would be considered a safe environment. Therefore, any possible error in allowing McFee to report the results of air sampling tests done by their consultant, which provided the basis of his opinion that the Kolb vault area was safe, would be harmless beyond a reasonable doubt.

The next issue involves the trial court's ruling on plaintiff's motion *in limine* concerning plaintiff's expert, Dr. Carnow. Plaintiff contends that the trial court committed reversible error by refusing to grant her motion *in limine* to bar cross-examination of Dr. Carnow concerning the fact that he had failed the internal medicine exam several times and that in previous trials he had given varying responses when questioned regarding the number of failures. Plaintiff cites to the case of *O'Brien v. Meyer* (1989), 196 Ill. App. 3d 457, 554 N.E.2d

257, for the proposition that an expert witness' past failure of a licensing exam has scant probative value which is outweighed by its prejudicial impact on the jury. Based upon this decision, it is plaintiff's position that, once the trial court is satisfied with an expert's qualifications and determines, as a matter of law, that the expert is qualified to testify, any attempts to impeach a witness based upon his qualifications should be disallowed and failure to do so constitutes reversible error.

Defendant counters with citation to *Trower v. Jones* (1988), 121 Ill. 2d 211, 520 N.E.2d 297, wherein the Illinois Supreme Court recognized that recent expansion in the scope of permissible expert testimony, as well as the "proliferation" of expert "locator" services and "professional experts" seasoned in the art of testifying, has heightened the need for thorough and comprehensive cross-examination.

Although we believe this issue to be a close call, we find that the trial court did not commit reversible error by ruling against plaintiff's motion *in limine* and allowing the cross-examination of Dr. Carnow regarding his failure to pass the certification examination.

First of all the *O'Brien* case is not directly on point. In *O'Brien*, plaintiff's only expert was a physician licensed in Florida since 1969. Nevertheless, the trial court allowed this expert to be impeached by the fact that she had failed the equivalent Illinois licensing exam four times in the 1950's and 1960's. On appeal the reviewing court found that there was little probative value in the fact that the witness had been unable to pass the Illinois licensing exam in the past since she was licensed in Florida and her testimony was based upon her experience in her particular specialties.

In the present case Dr. Carnow was offered as an expert in preventive medicine and occupational medicine in the area of lung diseases. Defense counsel was able to establish through cross-examination that Dr. Carnow's residency had come under the umbrella of internal medicine but that he was not board certified in internal medicine, nor was he board certified in pulmonary medicine, which is a subspecialty of internal medicine. Then defense counsel asked Dr. Carnow to confirm the fact that he had attempted to become board certified in internal medicine on five occasions but had failed the exam five times and that, in previous trials, he had testified that he had failed the exam only once. Dr. Carnow confirmed defense counsel's statements and no further questions on the matter were presented.

We believe that in this case, unlike in *O'Brien*, Dr. Carnow's failure to pass the board-certification exam in internal medicine did bear

upon the witness' credibility on the subjects to which he claimed expertise.

In *Elam v. Alcolac, Inc.* (Mo. App. 1988), 765 S.W.2d 42, 202, the Missouri Appellate Court was faced with a similar situation. In *Elam,* as in this case, Dr. Carnow testified as an expert, revealing on direct examination that he had never passed the internal medicine certification exam and that he had failed it five times. The trial court allowed, and the appellate court affirmed, defense counsel's cross-examination of Dr. Carnow on his failures to pass the internal medicine certification exam. The *Elam* court stated:

> "On the other hand, it was legitimate to cross-examine the witness as to how internal medicine impinged on his diagnoses and to impeach those opinions by his nonexpert status in that field." *Elam,* 765 S.W.2d at 202.

We note, however, that in *Elam* the trial court disallowed cross-examination of Dr. Carnow on the fact that in prior litigation he had minimized the number of times he had failed the internal medicine exam and the Missouri Appellate Court also affirmed this ruling. Nevertheless, just because the Missouri reviewing court held that it was not an abuse of discretion for the lower court to have disallowed such cross-examination does not mean that we must find that the trial court in this case abused its discretion by allowing it.

Although Dr. Carnow's prior testimony on his past medical exam failures is a collateral issue that does not directly impinge the credibility of Dr. Carnow's expert medical opinions, it does, to a limited extent, provide some basis for assessing the witness' veracity. Therefore, it would seem that the trial court in this case did not abuse its discretion by allowing the extremely brief inquiry into Dr. Carnow's prior testimony on the matter of his past exam failures. However, if it was error for the trial court to have allowed this cross-examination, as my colleagues determined in the special concurring opinion, there is no doubt that the error was harmless in light of all the evidence in this case.

■ Next, plaintiff complains that the trial court erred by allowing ADT to cross-examine her witness, Dr. Jones, on issues that went beyond the scope of direct examination. Specifically, plaintiff contends that Dr. Jones was presented, not as an expert, but merely to testify that he performed an autopsy on Kurrack following usual and ordinary autopsy procedures, which confirmed that Kurrack died from mesothelioma. Plaintiff charges that the scope of Dr. Jones' testimony was improperly expanded when the trial court permitted ADT to cross-examine him on matters outside the scope of direct, including

the pathologic criteria for a diagnosis of asbestosis, a diagnosis that Dr. Jones did not make in this case.

However, before trial plaintiff identified Dr. Jones as an expert witness and, pursuant to Illinois Supreme Court Rule 220 (134 Ill. 2d R. 220), gave answers to interrogatories which indicated that Dr. Jones might testify "that his findings would support a clinical diagnosis of asbestosis." ADT contends that by failing to elicit this testimony from their witness on direct examination, plaintiff was suppressing unfavorable information, and that ADT had the right to question this witness as to whether Kurrack's condition was consistent with asbestosis.

As stated in the Handbook of Illinois Evidence, cross-examination is a matter of right and an important aspect of due process. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.10, at 416 (5th ed. 1990); *Millard Maintenance Service Co. v. Bernero* (1990), 207 Ill. App. 3d 736, 748, 566 N.E.2d 379.) The scope of cross-examination is not limited to the actual material discussed during direct examination, but to the subject matter of direct examination and the extent of cross-examination is left to the broad discretion of the trial court. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.11, at 418-21 (5th ed. 1990).) Since Dr. Jones testified concerning the autopsy performed on Kurrack, it was proper to allow questioning on all aspects of the autopsy and equally enlightening to discover what Dr. Jones failed to find during the autopsy, as it was to discover what he found in the course of the autopsy. Therefore, it was legitimate for ADT to inquire whether Dr. Jones knew the pathologic criteria for a diagnosis of asbestosis and whether such a diagnosis could have been made in this case. The trial court did not abuse its discretion in this matter.

■ The next issue to consider is whether the trial court erred by refusing to bar ADT's expert, Dr. Sawyer, from testifying. To address this issue we should review the facts as they relate to this matter.

The record shows that trial was originally set in this case for September 13, 1991. On July 10, 1991, ADT moved to extend the time for identification of experts, and on July 15, 1991, the trial court ordered that the case was an asbestos case, properly on the asbestos litigation docket, and that "expert disclosure and all matters coming under Rule 220 will be in accordance with the rules of asbestos litigation as established by this court."

Dr. Sawyer was identified as an expert witness on August 27, 1991, and a brief synopsis of the subject matter on which he was expected to testify was supplied to plaintiff, along with his curriculum

vitae. Plaintiff then served ADT with notice that Dr. Sawyer was to be deposed on September 23, 1991. The deposition did not take place.

Shortly thereafter, ADT requested permission to perform destructive tests on John Kurrack's lung tissue obtained at the time of his autopsy. The motion was granted and trial was reset for January 31, 1992. ADT then notified plaintiff that Dr. Sawyer would not be available for deposition until after these tests were performed. Despite numerous attempts by plaintiff to set a date for Dr. Sawyer's deposition, Dr. Sawyer remained undeposed as of January 30, 1992. Plaintiff then moved to bar Dr. Sawyer from testifying. However, instead of barring his testimony, the trial court ordered that Dr. Sawyer be deposed on February 4, 1992, and continued trial until February 7, 1992. Plaintiff deposed Dr. Sawyer and trial commenced according to this schedule.

Although plaintiff had the opportunity to depose Dr. Sawyer prior to trial, plaintiff contends that because Dr. Sawyer was not made available for deposition more than 60 days prior to trial, as required by Supreme Court Rule 220, she was highly prejudiced and that this court should reverse the judgement and grant a new trial. Plaintiff argues that the trial court did not have the authority to disregard the mandates of Supreme Court Rule 220 and establish special rules for asbestos cases, nor did it have the discretion to grant a continuance of less than 60 days when it continued trial for the purpose of allowing further discovery. We disagree.

The imposition of sanctions for a violation of Supreme Court Rule 220 is within the discretion of the trial court, whose decision will not be disturbed absent a clear showing of an abuse of that discretion. (*Marshall v. Osborn* (1991), 213 Ill. App. 3d 134, 141, 571 N.E.2d 492.) Barring a witness' testimony is only one sanction available to the court. (*Kosinski v. Inland Steel Co.* (1989), 192 Ill. App. 3d 1017, 549 N.E.2d 784.) The sanction of continuance to permit deposition of the expert is an allowable alternative to barring testimony of the witness. (*Kosinski*, 192 Ill. App. 3d at 1027.) Consequently, plaintiff is incorrect in her assertion that the trial court did not enforce Rule 220 by refusing to bar Dr. Sawyer's testimony.

Furthermore, although plaintiff alleges that she was prejudiced by the fact that the deposition of the witness took place only three days before trial, plaintiff does not specify in what way she was prejudiced. Plaintiff states that the scheduling of the deposition left her with only a few days to prepare her own expert to respond to Dr. Sawyer's testimony and that she had little time to determine whether any additional experts would be necessary to rebut Dr. Sawyer's testimony. While this may be true and a longer time to prepare may have been

more convenient, this falls short of a claim of actual prejudice. Plaintiff does not indicate what testimony of Dr. Sawyer's constituted surprise information which she was unprepared to meet. Consequently, we find that the trial court did not abuse its discretion by refusing to bar Dr. Sawyer's expert testimony.

■■■ The final issue this court will address deals with the trial court's ruling concerning the division and testing of lung tissue samples. The record shows that on October 17, 1991, in response to a motion made by ADT asking that destructive testing of lung tissue be permitted, the trial court gave the following order:

> "Defendant shall divide the lung tissue of John Kurrack in the paraffin blocks equally into thirds. Defendant shall deliver one-third of the tissue to the Plaintiff for any tests the Plaintiff wishes to conduct. Defendant shall return the final third to Hinsdale Hospital. Hinsdale Hospital shall keep its third of tissue of John Kurrack in its possession and control during the pendency of this lawsuit and shall not conduct any tests or dispose of the tissue in any manner without further order of the court. Defendant shall make every attempt to divide each paraffin block of the lung tissue equally into three representative sections."

Plaintiff contends that it was error for the trial court to have allowed defendant's litigation consultant (Dr. Dodson) to divide the tissue without supervision or participation by plaintiff's representative.

At trial plaintiff's expert, Dr. Gordon, testified that he received five pieces of lung tissue aggregating about .34 grams. He also viewed the original histologic slides from the cut surface of the paraffin block of tissue. Based upon his inspection of the portions of lung tissue and the slides, he was able to determine the structure of the entire block of lung tissue. He testified that the lung tissue he received was not representative of the entire block of lung tissue and that three blocks of tissue, which contained both lung tissue and tumor, were not divided at all. Consequently, plaintiff contended that it was also error to have allowed defendant to decide who received the various portions of lung tissue.

After hearing plaintiff's allegations of error on this matter, the trial court found no evidence of impropriety or wrongdoing on the part of the defendant. Nonetheless, the trial court offered to grant plaintiff a continuance to allow plaintiff to conduct whatever additional testing was considered necessary by her expert. Plaintiff rejected this alternative, choosing not to perform any additional testing.

We find that plaintiff may not reject the trial court's offer to obviate a perceived error and then claim this same perceived error on appeal. It is clear that, whether or not it would have been more proper for the trial court to have ordered a neutral party to divide the lung tissue samples, the court's original decision is no longer at issue since the trial court made all of the remaining samples of lung tissue available to plaintiff for additional testing. Therefore, plaintiff may not now claim prejudice by the court's order.

■■■ The final two issues in this appeal are: whether the trial court erred in refusing to allow plaintiff to argue decedent's lost income and present testimony on its present value in today's dollars and whether the trial court erred by excluding evidence of the cost of the asbestos removal. Based upon our findings on the other issues on appeal, it is unnecessary to address these claims. Since there is no basis for reversing the jury's determination that ADT was not legally liable for decedent's death, there is no need to determine whether the trial court erred in excluding certain evidence dealing with decedent's lost wages.

■■■ With respect to the asbestos removal, plaintiff did not include this cost as an element of damages in any of her amended complaints, nor did plaintiff's experts present any evidence that it was necessary to remove the asbestos-containing material which lined the vault. Under these circumstances, we find no abuse of discretion in the trial court's decision to prohibit plaintiff from amending her complaint to include this element of damages and to disallow testimony on the cost of removal of the asbestos related material.

For all the reasons stated above, the verdict of the jury and judgment order entered in this case are hereby affirmed.

Affirmed.

JUSTICE COUSINS, specially concurring:

I agree with the holding of my learned colleague in this opinion on all evidentiary issues except for the trial court's ruling on plaintiff's motion *in limine* to bar cross-examination of plaintiff's expert, Dr. Carnow, about varying responses given by him in previous cases. It is my opinion that the trial court erred by refusing to grant plaintiff's motion *in limine* to bar cross-examination of Dr. Carnow about varying responses he had given in previous cases regarding the number of times he had failed the internal medical exam. In my opinion, this cross-examination related to a collateral matter, was clearly irrel-

evant and did not pertain either directly or indirectly to the credibility of the testimony of Dr. Carnow in this case.

The opinion in this case recognizes that in *Elam v. Alcolac, Inc.* (Mo. App. 1988), 765 S.W.2d 42, 202, the Missouri Appellate Court reviewed a trial court ruling which barred cross-examination of Dr. Carnow about responses he had given in several prior litigations regarding whether he failed the internal medicine boards once or twice rather than the actual five times. In the *Elam* case, the trial court barred the cross-examination and the Missouri Appellate Court affirmed the ruling of the trial court. I agree that "just because the Missouri reviewing court held that it was not an abuse of discretion for the lower court to have disallowed such cross-examination does not mean that we must find the trial court in this case abused its discretion by allowing it." (252 Ill. App. 3d at 901.) However, it is my view that the *Elam* case is correct on this issue and, therefore, our decision in this case on the identical issue should be identical.

Although I disagree on this particular issue, the evidence in support of the verdict which was rendered in the case we now review is so overwhelming that the trial court's error in allowing the improper cross-examination was harmless. Consequently, I specially concur in the opinion to affirm.

PRESIDING JUSTICE GORDON concurs in this special concurrence.