NO. 4-96-0591

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

KAREN GOSSARD,                          )   Appeal from

Plaintiff-Appellant,          )   Circuit Court of

v.                            )   Champaign County

JYOTI KALRA, M.D.,                      )   No. 94L1572

Defendant-Appellee,           )

and                           )

COVENANT MEDICAL CENTER OF              )

CHAMPAIGN/URBANA, a Not-for-Profit      )   Honorable

Corporation,                            )   George S. Miller,

Defendant.                    )   Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Karen Gossard filed a complaint in the cir­cuit court of Champaign County alleging medical malpractice against defendants Jyoti Kalra, M.D., and Covenant Medical Center (CMC).  The trial court entered a directed verdict in favor of CMC, and the jury returned a verdict for Dr. Kalra.  Gossard appeals, contending the trial court erred by (1) excluding evi­dence of Dr. Kalra's prior failed attempts to pass board certifi­cation examinations in radiation oncology and (2) refusing Gossard's request to send certain medical records to the jury room.  CMC is not a party in this appeal.  We affirm.

In 1992, Gossard was diagnosed with breast cancer.  As part of her treatment, Gossard was referred to Dr. Kalra for radiation therapy.  Gossard contends during treatment Dr. Kalra negligently created radiation fields that were "inappropriate and excessively large," which resulted in burns, disfigurement, lymphedema, infections, and mental suffering.    

Dr. Kalra filed several motions 
in
 
limine
.  One re­quested the trial court prohibit Gossard from presenting evidence concerning Dr. Kalra's failures to pass the board certification examination.  A deposition from another case revealed Dr. Kalra received board certification in radiation oncology in 1986 after three failed attempts to pass the oral portion of the examina­tion.  Dr. Kalra passed the written portion of the examination on his first attempt in 1982.  After hearing argument, the trial court granted Dr. Kalra's motion.

Prior to closing arguments, the trial court refused to send certain medical records to the jury room.  Gossard presented redacted versions (exhibit Nos. 8A and 14A) of two medical re­cords (exhibit Nos. 8 and 14), which she argued would eliminate con­cerns surrounding the larger records.  Dr. Kalra argued the redacted versions unduly emphasized the aspects Gossard believed to be most favorable to her case.  The trial court determined which exhibits would go to the jury room, and excluded exhibit Nos. 8 and 14.  After Gossard's counsel sought clarification whether the court's ruling excluded the redacted versions, the court respond­ed those were not in evidence.  The trial court then ex­plicitly reminded Gossard she may argue anything in evidence, even that not sent to the jury room.

Gossard first argues the trial court erred by barring reference to Dr. Kalra's earlier failures to acquire board cer­tification.  Gossard maintains these failures are directly rele­vant to Dr. Kalra's credibility in his expert testimony.  Gossard argues 
O'Brien v. Meyer
, 196 Ill. App. 3d 457, 554 N.E.2d 257 (1989), a case the trial court purportedly relied upon in grant­ing the motion 
in
 
limine
, is flawed.  Gossard contends two later cases declined to apply 
O'Brien
 in similar circumstances:  
Creighton v. Thompson
, 266 Ill. App. 3d 61, 69-70, 639 N.E.2d 234, 239 (1994), and 
Kurrack v. American District Telegraph Co.
, 252 Ill. App. 3d 885, 889-901, 625 N.E.2d 675, 685-86 (1993). 

Dr. Kalra contends the evidence was irrelevant and immaterial and, in the alternative, even if relevant, the proba­tive value of the evidence is outweighed by its prejudicial ef­fect.  Dr. Kalra argues 
O'Brien
 is applicable and Gossard's as­sertion 
Creighton
 and 
Kurrack
 failed to apply 
O'Brien
 in analo­gous situations is incorrect.  Dr. Kalra further argues even if the trial court committed error, the error was harmless.

A trial court's ruling on a motion 
in
 
limine
, whether to admit evidence, will not be disturbed on review absent a clear abuse of discretion.  
Swick v. Liautaud
, 169 Ill. 2d 504, 521, 662 N.E.2d 1238, 1246 (1996).  When a physician defending a medi­cal malpractice suit testifies as an expert, evidence as to his qualifications as an expert, such as the physician's age and practice, is admissible.  
McCray v. Shams
, 224 Ill. App. 3d 999, 1002, 587 N.E.2d 66, 68 (1992), citing 
Ward v. Epting
, 290 S.C. 547, 556, 351 S.E.2d 867, 872 (1986)
.  In gen­eral, any type of im­peach­ing mat­ter may be pro­duced during cross-exami­na­tion, be­cause a pur­pose of cross-exami­nation is to test the witness' credibil­ity.  
Rush v. Hamdy
, 255 Ill. App. 3d 352, 362, 627 N.E.2d 1119, 1126 (1993).  Rele­vant evi­dence may be excluded, however, when factors of prej­udice or confusion out­weigh its probative value.  
Gill v. Foster
, 157 Ill. 2d 304, 313, 626 N.E.2d 190, 194 (1993).  

In 
O'Brien
, the plaintiff's expert failed the Illinois licensing examination four times, but she later became licensed in Florida.  The first district held evidence of the expert's past failed attempts to become licensed in Illinois was inadmis­sible as to her credibility.  The 
O'Brien
 court
 reasoned:

"[O]nce the qualifying threshold has been met, attempts to impeach the expert's opinion should have a clear link to facts and assump­tions underlying the opinion, the meth­odology or testing used, the knowledge and experience of the expert in the matters to which he testifies, personal bias (such as the fact he or she is paid to testify), and so forth.  Matters going to schooling and li­censing are in a different category, we be­lieve, because of their attenuated relevance to the medical opinion in issue.  Also, there is a practical consideration of where to draw the line.  Should juries be allowed to con­sider the school rank of a witness, or the fact that he or she failed a course?  Few would argue that the answer to that question should be no."  
O'Brien
, 196 Ill. App. 3d at 462-63, 554 N.E.2d at 261.

The 
O'Brien
 court examined 
Ward
, (290 S.C. 547, 351 S.E.2d 867, in which a South Carolina court found it prop­er to cross-examine an expert witness regarding her fail­ure to achieve board certification in her specialty, because the court found it was relevant to whether the expert was quali­fied to meet her specialty's standards.  
The 
O'Brien
 court dis­tin­guished 
Ward
, stating "if an ex­pert gives an opinion relat­ing to a spe­cialty in which she has not obtained certifica­tion, her credi­bility as a specialist is in issue."  
O'Brien
, 196 Ill. App. 3d at 464, 554 N.E.2d at 261.  The 
O'Brien
 court 
believed permitting impeach­ment based on prior failures to pass the Illi­nois examina­tion had little value con­sidering the witness was licensed in Florida.  The court conclud­ed, "[w]hat scant proba­tive value this informa­tion had was out­weighed by its preju­dicial impact."  
O'Brien
, 196 Ill. App. 3d at 464, 554 N.E.2d at 262.

We agree 
Creighton
 and 
Kurrack
 are dis­tin­guish­able.  In 
Kurrack
, the first district found the expert witness' failure to pass the board certification examination in internal medicine was relevant to his credibility on the subjects to which he was tes­tifying.  
Kurrack
, 252 Ill. App. 3d at 900-01, 625 N.E.2d at 685-86.  The witness in 
Kurrack
 had not only failed the board certif­ication examination, but also had never attained board certifica­tion.  
Kurrack
, 252 Ill. App. 3d at 900, 625 N.E.2d at 685.  In 
Creighton
, the first district affirmed the trial court's decision to allow cross-examination of the plaintiff's expert about re­strictions on his medical license.  The 
Creighton
 court conclud­ed, however, 
O'Brien
 was inapplicable because the 
Creighton
 facts concern 
current
 restrictions on an expert's license to practice.  
Creighton
, 266 Ill. App. 3d at 69-70, 639 N.E.2d at 239.

We note the first district has stated an expert's fail­ure to pass a board certification examination is both relevant and admissible.  
Rockwood v. Singh
, 258 Ill. App. 3d 555, 557, 630 N.E.2d 873, 875 (1993).  There is, however, no indication the witness at issue in 
Rockwood
, like those in 
Ward
 and 
Kurrack
, ever attained board certification.  
Rockwood
, 258 Ill. App. 3d at 557-58, 630 N.E.2d at 875 (determining because the defendant did not testify as an expert, evidence of his failure to pass a board certification examination was properly barred).  In this case Dr. Kalra was board certified at the time he treated Gossard and at trial.

We find the trial court did not abuse its discretion in barring evidence of Dr. Kalra's prior failures.  The facts of this case are more analogous to 
O'Brien
 than to the cases cited by Gossard.  The trial court may have found the ra­tionale in 
O'Brien
 to be instructive and deter­mined evi­dence of Dr. Kalra's failures had little probative value and any it had was out­weighed by its prej­udicial impact.  Dr. Kalra beca
me board certi­fied over 6½ years prior to his treatment of Gossard and he re­mained board certified through­out Gossard's treatment.  

Second, Gossard argues her "medical records *** were properly admitted into evidence and should have been submitted to the jury as properly admissible business records."  Gossard con­tends two truncated versions, exhibit Nos. 8A and 14A, were ad­mit­ted into evidence, arguing because they were admitted as a whole, they were admitted in part.  

Gossard's argument indicates she has confused the issue of admissibility with the issue of whether exhibits will be sent to the jury room.  Simply because something is admitted does not mean it is going to the jury room.  Section 2-1107(d) of the Civil Practice Law states:  "Papers read or received in evidence *** 
may
 be taken by the jury to the jury room for use during the jury's deliberation."  (Emphasis added.)  735 ILCS 5/2-1107(d) (West 1994).  The trial court thus has been given con­sid­er­able discre­tion in this determination.  
Merlo v. Parisi
, 255 Ill. App. 3d 53, 61, 627 N.E.2d 309, 315 (1993); 
Fultz v. Peart
, 144 Ill. App. 3d 364, 379, 494 N.E.2d 212, 223 (1986); 
Wetherell v. Matson
, 52 Ill. App. 3d 314, 318, 367 N.E.2d 472, 475 (1977). 

We find no abuse of discretion by the trial court.  The exhibits Gossard argues should have been sent to the jury room were voluminous; three contained over 100 pages.  The exhibits contained irrelevant information pertaining to treatment for unrelated medical problems, including carpal tunnel surgery and a hysterectomy.  The records also contained information referring to Gossard's domestic circumstances and the alleged episode of overradiation, both barred by granted motions 
in
 
limine
.  In addition, Gossard does not argue the trial court prohibited tes­timony on these exhibits, and the trial court expressly reminded Gossard she may argue evidence within the exhibits during closing arguments.  

Gossard further argues the truncated versions were admitted.  Even if that were true, simply because they were ad­mitted does not require they be sent to the jury room.  Exhib­it No. 8A referenced information regarding Gossard's domestic cir­cum­stances, information barred by the trial court.  Moreover, be­cause truncated versions often highlight evidence one side finds favorable, the trial court's determination in regards to the truncated versions was not an abuse of discretion.

Affirmed.

GARMAN and COOK, JJ., concur.