BETTY RUFFIN, Plaintiff-Appellee, *v.* THE DEPARTMENT OF TRANSPORTATION *et al.*, Defendants-Appellants.

Fifth District    No. 80-457

Opinion filed November 3, 1981.

Tyrone C. Fahner, Attorney General, of Chicago (Edward M. Kay, Assistant Attorney General, of counsel), for appellants.

Dennis W. Shevlin, of Belleville, for appellee.

Mr. PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Defendants, the Illinois Civil Service Commission (Commission) and the Illinois Department of Transportation (Department), appeal from the judgment of the circuit court of St. Clair County reversing the Commission's decision to discharge plaintiff, Betty Ruffin, from her employment as a highway maintainer in the Department. Two issues are raised on appeal: (1) whether the circuit court had jurisdiction to review the Commission's decision to discharge; and (2) whether there was sufficient cause to warrant plaintiff's discharge.

On April 24, 1979, the Department began discharge proceedings against plaintiff alleging that she violated the "Work Policies for Maintenance and Traffic Negotiated Rate Personnel" by intentionally furnishing a false doctor's statement to substantiate a request for a leave of absence and by misrepresenting facts so as to obtain such absence during a work emergency period. On August 7, 1979, a hearing was had before the Commission, and plaintiff was ordered discharged.

The record indicates that on January 11, 1979, James Friederich, a personnel manager with the Department, conducted an "exit interview" with plaintiff after she had submitted notice of her resignation. Plaintiff, who had a very good work record during the previous four years, told Mr. Friederich that she had found another job and planned to resign. On January 16, 1979, the day her resignation was to become effective, plaintiff telephoned Mr. Friederich and informed him that she desired to withdraw her resignation and, instead, requested a leave of absence. When Mr. Friederich told plaintiff to submit the reason for her leave request in written form, she sent a letter, which stated:

"This letter is in regards to the resignation I turned in to be effective 1-16-79. I truly regret not explaining my personal problem which prompted me to do as I done [sic]. But I would like to withdraw my resignation only to be replaced with a leave of absence [sic]. My reason is that I had to be off at least a month due to the illness of my brother that lives out of state. He was involved in a car accident which paralyzed him from the accident. And doctors requested to see the family to make arrangements for permanent care which he would have to have. Myself and one other sister is [sic] the only family left. My mother and father are deceased and we are the ones that can take care of family problems. And I had to make a quick decision which I was under a little pressure and made a hasty decision. I had planned to find another job. But after I had arrived it wasn't as much as I expected, or as hard an arrangement to make. But if I can have a leave, and I do know it's at a bad time. [Sic.] But please give it your best of understanding. I am sorry to cause this kind of decision at such a bad time. But please understand if possible. I can be reached at area code 213-733-6971 address 4307 W. 28th Apt. 207, Los Angeles, California. I will be returning to work on February 16 if it can be approved."

Plaintiff's request was approved by the Department on the condition that when she returned to work, she furnish a doctor's statement describing her brother's condition and her need to be in California.

On February 9, 1979, Gary Smith, an administrative manager with the Department, received a letter dated February 6, 1979, purporting to be from a Dr. William Meyer, a neurologist specialist at UCLA Medical Center in Los Angeles, California, which stated:

"The family of my patient. [Sic.] Mr. Willie Ruffin. [Sic.] was requested by me Dr. Wm. Meyer for preparations for long term care for paralasis [sic] sustained in an automobile accident. The arraingements [sic] has been [sic] properly made for his type of care. The progress of his conditionat [sic] this time is listed as stable."

Because of obvious grammatical errors and the unprofessional appearance of the doctor's letter, Mr. Friederich became suspicious that it was not genuine. He telephoned the UCLA Medical Center and was informed that there was no neurologist on the medical staff named William Meyer. Mr. Smith then confronted plaintiff with this information and gave her two weeks to provide the Department with additional information concerning the nature of her brother's illness and the reason for her California visit. Although plaintiff protested that she need not supply such confidential data, the Department subsequently received a letter from plain-

tiff's brother, Willie E. Ruffin, indicating that plaintiff had visited him in California on January 16, 1979, at his request and at the request of the doctor. The letter stated that plaintiff's brother was not treated at the UCLA Medical Center but was treated at home by a Dr. William Meyer, whom he could not now locate. The Department introduced evidence that no person by the name of William Meyer was licensed to practice medicine in California.

Plaintiff gave testimony in her own behalf. She stated that as a highway maintainer she was responsible for plowing and salting the streets and highways during the winter months and for routine maintenance the rest of the year. She stated that the reason for her resignation was to relocate in California and that on January 12, 1979, the day after her interview with Mr. Friederich, she left for California and arrived the next day. She related that she stayed in California nine or 10 days.

Plaintiff testified that her brother was in an automobile accident in 1975 in Dayton, Ohio, in which he suffered head injuries, numbness and possible paralysis. According to plaintiff, her brother moved to California in February 1978. Plaintiff stated that her brother suffered recurring physical and mental problems as a consequence of his accident. Plaintiff related that upon her arrival in California, her brother informed her that he was feeling well. Plaintiff stated that at that point, she decided it was no longer necessary for her to remain in California but that she, nevertheless, requested a 30-day leave of absence because she had only a little information from her brother's doctor concerning his condition. Plaintiff admitted that she was aware of the fact that at the time she requested her leave of absence the Department was operating under emergency conditions due to the winter season.

The hearing officer determined all issues of credibility against plaintiff and found that she had misrepresented the reasons for requesting a leave of absence. The disciplinary action recommended by the hearing officer was that plaintiff be given a 90-day suspension in addition to the 30-day suspension which was initially imposed.

On September 20, 1979, the Commission entered an order which concurred in the factual findings of the hearing officer but ordered that plaintiff be discharged from the Department. The Commission's decision was mailed to plaintiff on September 21, 1979, by certified mail.

Subsequently, plaintiff's attorney sent a letter to the circuit court clerk's office in St. Clair County expressly requesting that an enclosed complaint be filed. The letter informed the clerk's office that enclosed were the complaint and five copies, a $40 check to cover filing fees, and a $19.80 check for service of process upon the Department. The letter was marked "Received 10-22-79" and file stamped "Oct 22 1979." The record indicates that the complaint was originally file stamped October 22, 1979,

but the "Oct 22" was subsequently deleted and replaced by the date "Nov 1."

On August 27, 1980, the circuit court reversed the Commission's decision to discharge plaintiff, finding that although the Commission's factual findings were supported by the manifest weight of the evidence, the Commission had abused its discretion in imposing discharge as a sanction. The circuit court remanded the cause to the Commission with directions to reinstate the hearing officer's sanction of a 90-day suspension.

Defendants first contend on appeal that the circuit court lacked jurisdiction to review the Commission's decision because the complaint indicates that it was not filed within the 35-day time limit prescribed by section 4 of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 267). Defendants, relying on *Varnes v. Dougherty* (1976), 39 Ill. App. 3d 476, 350 N.E.2d 6, maintain that plaintiff had until October 26, 1979, to file her complaint but that the record indicates that the filing occurred November 1, 1979. Plaintiff urges that the complaint was actually filed October 22, 1979. Having examined the record before us, we conclude that the complaint was filed within the time limit set forth in the Administrative Review Act.

■■ ■ It is evident from the record that the file stamp date had been changed from "Oct 22" to "Nov 1." Nevertheless, in the absence of leave of court, no one has authority to file documents as of any other date than that on which they are received. (*Cf. Radloff v. Haase* (1902), 197 Ill. 98, 64 N.E. 557; 1 Nichols, Illinois Civil Practice §380, at 406 (1976).) To alter the date upon which a complaint is filed is to alter the rights of the parties, and this may not be done without judicial approval. *Radloff v. Haase*.

■■ It is evident from the record that plaintiff's attorney caused the complaint to be delivered to the clerk's office, along with the appropriate fees, on October 22, 1979. However, in spite of the fact that the cover letter forwarding the complaint was file-marked "Oct 22, 1979," the filing of the complaint itself was delayed until a check for the proper amount of the sheriff's fees was received, plaintiff having forwarded a check in excess of the amount due the sheriff. It is apparent that plaintiff's complaint was actually filed by her on October 22, 1979. The absence of the filing date in no way alters that fact. We therefore conclude that plaintiff's complaint was timely filed.

The remaining issue presented for review is whether the conduct of the plaintiff constituted sufficient cause for discharge. Defendants contend that the facts conclusively establish that plaintiff violated work rules by falsifying her employment records for the purposes of obtaining a leave of absence during emergency conditions. Defendants urge that such action constitutes legal ground for discharge. Plaintiff contends that in

light of her past work record and the importance of public employment, her actions do not warrant such a sanction.

■■ The applicable law relating to this issue was recently stated by this court in *Sutton v. Illinois Civil Service Com.* (1981), 94 Ill. App. 3d 134, 418 N.E.2d 791. There it was stated:

"Section 11 of the Personnel Code (Ill. Rev. Stat. 1979, ch. 127, par. 63b111) provides that no duly appointed employee shall be discharged except for 'cause.' Inasmuch as cause is not defined in the statute, whether conduct is sufficient cause for discharge is generally for the Commission to determine. However, unlike findings of fact, agency determinations of cause are not prima facie true and correct and are subject to judicial review. Substantial deference must be given the Commission's ruling on what constitutes cause. *(Dept. of Mental Health v. Civil Service Com.* (1980), 86 Ill. App. 3d 1072, 408 N.E.2d 775.) However, the Commission's determination may be overturned if based on trivial, arbitrary or unreasonable grounds. *(Fox v. Civil Service Com.* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201; *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389, *aff'd* (1976), 69 Ill. 2d 27, 370 N.E.2d 511.) 'Cause' has been defined as some substantial shortcoming which renders continuance in office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and sound public policy recognizes as a good cause for no longer holding the position. *(Fox v. Civil Service Com.; Parkhill v. Civil Service Com.* (1978), 58 Ill. App. 3d 291, 374 N.E.2d 254.) Employment history has a bearing on the issue of cause. *(Kreiser v. Police Board; Fox v. Civil Service Com.)* Thus, cause must properly balance employee's interests in avoiding dismissal not warranted by the facts and the State's interest in maintaining efficiency through the prompt removal of employees who presently contribute to inefficiency because of past conduct. *Fox v. Civil Service Com.*" *(Sutton v. Illinois Civil Service Commission* (1981), 94 Ill. App. 3d 134, 137, 418 N.E.2d 791, 793.)

Consequently, under the standard established in *Sutton*, the Commission's decision to discharge plaintiff cannot be overturned unless the reasons for such discharge are trivial, arbitrary or unreasonable. It is apparent, however, that the Commission, rather than the judiciary, is better able to determine the effect that an employee's conduct will have on the proper operation of his or her department. *Jones v. Civil Service Com.* (1979), 80 Ill. App. 3d 74, 76, 399 N.E.2d 256, 258.

In the instant case, the plaintiff knowingly disregarded Department rules, provided falsified information to her employer, and was absent

during a critical work period when she was most needed. We conclude that the evidence justifies plaintiff's discharge on two grounds. First, she has displayed a lack of truthfulness, honesty, and integrity, which a public agency is entitled to expect from its employees. (*Bruno v. Civil Service Com.* (1962), 38 Ill. App. 2d 100, 110, 186 N.E. 108, 113.) Further, plaintiff's conduct constituted neglect of duty. See *Battle v. Illinois Civil Service Com.* (1979), 78 Ill. App. 3d 828, 832, 396 N.E.2d 1321, 1325.

■■ While the plaintiff's past work record is good, it cannot be said to outweigh the serious misconduct which occurred in this case. Therefore, we reverse the trial court's determination that the Commission abused its discretion in discharging plaintiff.

Plaintiff's reliance on *Fox v. Civil Service Com.* is misplaced. In *Fox*, the court concluded that a Department of Revenue investigator's use of profanity towards certain taxpayers did not constitute cause for discharge where there was provocation, the employee had a good work record, the behavior amounted to overzealousness rather than neglect of duty or intentional misconduct, and there was a department policy of selective enforcement against the use of profanity. The facts in the case at bar are not comparable. Here, the evidence establishes an intentional violation of Department rules which resulted in the absence of an employee during a time when all Departmental personnel were needed. Under these circumstances, we cannot say that the Commission's decision to discharge plaintiff from public employment was based on trivial, arbitrary or unreasonable grounds.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is reversed, and the order of the Civil Service Commission is reinstated.

Reversed.

HARRISON and WELCH, JJ., concur.