THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RANDALL BEU *et al.*, Defendants-Appellees.

Second District   Nos. 2—94—0001, 2—94—0007 cons.

Opinion filed November 30, 1994..

94

Gary W. Pack, State's Attorney, of Woodstock (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Joseph P. Condon and Gail A. Moreland, both of Condon & Zopp, Ltd., of Crystal Lake, for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

Defendants, Randall Beu and Herbert Pitzman, were charged by indictment with eavesdropping (720 ILCS 5/14—2 (West 1992)). Pursuant to defendants' motion, the trial court dismissed the indictment. The State appeals, contending that the court erred in dismissing the indictment based on a finding of a substantial denial of due process.

Defendants Pitzman and Beu are the chief and administrative sergeant, respectively, of the Woodstock police department. The charges in this case arose from the alleged taping of calls on an unlisted, nonemergency telephone line which was used by officers, arrestees and others for personal telephone calls.

We first summarize briefly the evidence before the grand jury. At the relevant time there were six telephone lines into the Woodstock police department. Emergency calls came in on one of two 911 lines. Lines numbered 338-2131, 338-2132, and 338-2133 were listed nonemergency numbers. Finally, 338-7799 was an unlisted, nonemergency number.

Several officers testified that as part of their training and orientation with the Woodstock police, they were instructed to use 338-7799 for personal calls, since this line was untaped. This was confirmed by memoranda issued by the chief. The officers testified that they had, in fact, used this line for personal calls with friends and relatives. These calls were personal and confidential. The officers did not believe that the calls were being taped and would not have made such calls on that line had they known it was being taped. This line was also used by representatives of the Fraternal Order of Police to conduct union business at a time when negotiations for a new collective bargaining agreement were taking place.

In addition, officers instructed arrestees to use this line to contact their relatives or attorneys. The officers believed that this procedure would protect the arrestees' privacy, since the line was supposedly untaped. In addition, officers occasionally used the line to verify bank alarms.

On or about August 11, 1992, the officers became aware that 338-7799 was in fact being taped. On that date, defendant Pitzman informed an officer that he had heard derogatory comments about Sergeant Beu from listening to tapes of calls made over that line. The grand jury also heard Pitzman's testimony in a related civil case in which he acknowledged authorizing taping of calls on the 338-7799 line.

The grand jury returned a 10-count indictment against both defendants. The parties engaged in reciprocal discovery. Defendants attached to their discovery response a document entitled "Intergovernmental Agreement Between THE COUNTY OF McHENRY and CITY OF WOODSTOCK for Call Handling for Enhanced 9-1-1 Emergency Communications." As the title implies, the agreement provides procedures for processing 911 calls within McHenry County. The agreement does not indicate who drafted it. It is signed by Ann S. Hughes, county board chairman, on behalf of McHenry County,

Stephen M. Kite, chairman, on behalf of the McHenry County emergency telephone systems board, and Pitzman on behalf of the Woodstock police department. Defendants also attached a letter from Assistant State's Attorney Mary Kay Walter forwarding a copy of the agreement to Pitzman. The State did not tender the agreement to defendants in its discovery response.

Defendants moved to dismiss the indictment, alleging a substantial denial of due process in the course of the grand jury proceedings. Defendants argued that they acted in the reasonable belief that the intergovernmental agreement required the taping of all incoming calls to the Woodstock police department. Specifically, defendants cited the following portions of the agreement:

"All calls of an administrative or non-emergency nature shall be referred to Woodstock's published non-emergency telephone number.

* * *

The County of McHenry shall cause each McHenry County PSAP [Public Service Answering Point] Center (including the County PSAP Center) to keep all records, times, and places of all calls for a period of no less than one (1) year, except for recording tapes of all calls which shall be retained a minimum of no less than thirty (30) days. It shall be the responsibility of Woodstock to maintain the report of the call and the disposition of each call received."

Defendants contended that the State's Attorney's office requested them to comply with the intergovernmental agreement, then prosecuted them for the very conduct which the agreement required. Defendants further alleged that the prosecutor informed the grand jury that it could subpoena any documents it wished, but failed to inform it of the existence of the intergovernmental agreement. Finally, defendants argued that they were prejudiced because the State failed to tender the intergovernmental agreement in discovery. Defendants claimed these acts by the State denied them fundamental due process.

After hearing arguments on the motion, the trial court dismissed the indictment. The court stated:

"Well, I don't think it's a question of who is telling anybody to commit a crime. I've read this agreement with interest. I've read the letters accompanying with interest. This agreement is a very poorly drafted document. There isn't any question about it. But that doesn't surprise me. Motion is allowed."

The State filed a timely notice of appeal.

On appeal, the State contends that the trial court erred in dismissing the indictment. The State acknowledges that the court

has the authority to dismiss an indictment prior to trial where there has been a clear denial of due process, but maintains that the court must use this power sparingly and should not consider the quality of the evidence before the grand jury or the nature of any affirmative defenses which defendants may assert. While the State strenuously disputes that the intergovernmental agreement excuses defendants' acts, it contends that even if the agreement is in fact exculpatory, the trial court should not have dismissed the indictments before trial on the basis of an affirmative defense.

Defendants' arguments in support of the trial court's order are difficult to fathom. Defendants contend that they are not merely asserting an affirmative defense to the charges, then proceed to argue that the intergovernmental agreement unambiguously excuses their conduct. Defendants further contend that the prosecutor deprived them of due process by failing to reveal the existence of the intergovernmental agreement to the grand jury. Alternatively, they contend that the court properly dismissed the indictment as a sanction for the State's failure to disclose the agreement in discovery pursuant to *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.

■ The trial court has the inherent authority to dismiss an indictment where there has been "an unequivocally clear denial of due process." (*People v. Lawson* (1977), 67 Ill. 2d 449, 456; see also *People v. Knop* (1990), 199 Ill. App. 3d 944, 949.) However, this power should be utilized with restraint, and a due process violation will warrant dismissal only where the violation is clear and can be ascertained with certainty. (*People v. Polonowski* (1994), 258 Ill. App. 3d 497, 500.) An indictment returned by a lawfully constituted grand jury is presumed valid and sufficient to justify a trial of the charges on the merits. *People v. Torres* (1993), 245 Ill. App. 3d 297, 300.

■ The merits of a case are not meant to be decided "in the vacuum of a motion to dismiss." (*People v. Gerdes* (1988), 173 Ill. App. 3d 1024, 1031, citing *People v. Rose* (1976), 44 Ill. App. 3d 333, 338.) In ruling on a motion to dismiss the indictment, the trial court is not permitted to "recognize and act upon any defenses it considers may exist to the indictment." *People v. Lightner* (1986), 145 Ill. App. 3d 741, 745; see also *Knop*, 199 Ill. App. 3d at 950.

Here, the existence of the intergovernmental agreement presents, at best, a potential affirmative defense. The appropriate forum to present such a defense is at a trial on the merits.

■ Defendants next contend that they were denied due process because the prosecutor failed to disclose the intergovernmental agreement to the grand jury. However, the prosecutor has no duty to

present exculpatory evidence to the grand jury. (*United States v. Williams* (1992), 504 U.S. 36, 51-52, 118 L. Ed. 2d 352, 368-69, 112 S. Ct. 1735, 1744-45; *People v. Torres* (1993), 245 Ill. App. 3d 297, 300-01.) "It is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge." (*Williams*, 504 U.S. at 51, 118 L. Ed. 2d at 368, 112 S. Ct. at 1744.) Grand jury proceedings are "not intended to approximate a trial on the merits." (*People v. Fassler* (1992), 153 Ill. 2d 49, 59.) The prosecutor's duty is to present to the grand jury information that tends to establish probable cause. *Fassler*, 153 Ill. 2d at 60.

Given that the prosecutor had no duty to present arguably exculpatory evidence to the grand jury, we cannot uphold dismissal of the indictment on this basis. To hold otherwise would require every prosecutor to anticipate possible defenses and produce all exculpatory information within his knowledge. This, in turn, would transform the grand jury proceeding into a mini-trial on the merits. This would be inconsistent with the grand jury's traditional function as an accusatory body.

■ Defendants' final contention is that the dismissal is justified as a sanction for the State's violation of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194. *Brady* requires the prosecution to provide to a defendant, upon request, evidence which would tend to exculpate him or reduce the penalty. (*Brady*, 373 U.S. at 87-88, 10 L. Ed. 2d at 218-19, 83 S. Ct. at 1197.) However, a *Brady* violation does not necessarily mandate the ultimate sanction of dismissal. Such drastic sanctions should be resorted to only when a lesser measure, such as a continuance, would be ineffective. See *People v. Lucas* (1986), 140 Ill. App. 3d 1, 12.

In the instant case, defendants cannot seriously contend that they were surprised or prejudiced by the existence of the intergovernmental agreement. Defendant Pitzman signed the agreement. It was defendants' motion that injected the agreement into the case. Finally, defendants themselves tendered the agreement in their discovery response. It would be absurd to hold that defendants were entitled to dismissal of the indictment because the State failed to provide in discovery a document which defendants were simultaneously providing to the State.

None of the rationales offered by defendants supports the trial court's decision to dismiss the indictment. To the extent the intergovernmental agreement provides a defense to defendants' conduct, the issue is properly raised at a trial on the merits.

For the foregoing reasons, the judgment of the circuit court is reversed and the cause remanded for further proceedings.

Reversed and remanded.

GEIGER and DOYLE, JJ., concur.