SUZANNE PHILLIPS, Plaintiff-Appellee, v. PHYLLIS GANNOTTI, Defendant-Appellant.

First District (3rd Division)    No. 1—00—3565

Opinion filed January 16, 2002.

WOLFSON, J., specially concurring.

Momkus, Ozog & McCluskey, L.L.C., of Downers Grove (Mark W. Monroe, James F. McCluskey, and E. Angelo Spyratos, of counsel), for appellant.

514

Cogan & McNabola, P.C., of Chicago (John M. Power, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

Defendant, Phyllis Gannotti, appeals after a jury verdict finding her negligent in causing an automobile collision on March 20, 1996, in which plaintiff, Suzanne Phillips, was injured. Defendant argues that the trial court improperly barred her from questioning an eyewitness about his opinion concerning plaintiff's speed. Defendant also argues that the trial court erred in directing a verdict in favor of plaintiff on the issue of contributory negligence. Plaintiff questions this court's jurisdiction over most of the issues on appeal; she maintains that defendant's posttrial motion was not timely filed. We find that we have jurisdiction, and we reverse and remand for a new trial.

## BACKGROUND

Plaintiff's complaint alleged that defendant was negligent in colliding with plaintiff's vehicle at an intersection. Defendant asserted plaintiff's contributory negligence as an affirmative defense.

Plaintiff's answers to interrogatories pursuant to Supreme Court Rule 213(g) (177 Ill. 2d R. 213(g)) stated that witness Charles Parcell would testify that in his opinion plaintiff was traveling at the speed limit at the time of the collision.

Before the start of testimony, one of defendant's attorneys stated that the other defense counsel had spoken to Parcell, who had been subpoenaed by plaintiff. (Plaintiff asserts that the witness was also subpoenaed by defendant, but Parcell's trial subpoenas are not in the record.) Defense counsel reported that Parcell was going to testify that plaintiff had been speeding, which was contrary to plaintiff's answers to interrogatories.

Defense counsel claimed that this opinion was new to him because Parcell had refused to talk on the telephone prior to trial. Defendant asked for the opportunity to cross-examine Parcell about his opinion of plaintiff's speed, and defendant filed a supplemental answer to her opinion interrogatories. The supplemental interrogatory stated Parcell would testify that the speed of plaintiff's vehicle immediately prior to impact was 45 to 50 miles per hour (when the speed limit was 40 miles per hour). After plaintiff represented that she was not going to call Parcell as a witness, defendant asked that the witness be allowed to testify as his witness and would give his new opinion.

The court did not address the Parcell issue until later, after testimony had begun. It ruled that Parcell could testify as an occurrence witness but barred Parcell's opinion about plaintiff's speed. Parcell testified in an offer of proof that immediately before the collision

he observed plaintiff's car speeding 5 or 10 miles per hour over the speed limit.

Defendant testified that on the day of the accident she was lost and ended up at the intersection of United Lane and Devon Avenue. United Lane was a north-south street, and Devon was an east-west, four-lane highway. The speed limit on Devon was 40 miles per hour. United Lane had a stop sign where it intersected with Devon. Devon did not have any stop signs or stop lights at United Lane.

Defendant further testified that she was going to make a right-hand turn onto Devon. She stopped her front bumper even with the stop sign. After she stopped, she had to move up a little bit. She did not get very far into the intersection when her car collided with plaintiff's car. The impact happened just after she let her foot off the brake. She was going a lot less than 20 miles an hour. According to defendant, plaintiff was going with the flow of traffic; plaintiff was going pretty fast.

Plaintiff testified that her vehicle was in the right-hand lane of Devon. She did not know exactly what speed she was traveling; she was going somewhere near 40 miles per hour. She was 5 or 10 feet away from the intersection when she first saw defendant's car. When she saw defendant, defendant had passed the stop sign. Two or three seconds elapsed between the time she first saw defendant and the time of the collision.

Plaintiff further testified that, when she first saw defendant, she took her foot off the accelerator. When she realized defendant was not going to stop, she hit the brakes and turned the steering wheel to the left. There was no one in oncoming traffic so she headed in that direction. Probably fewer than two seconds passed from the time that she realized that defendant was not going to stop until the time she hit the brakes and spun the wheel to the left. She did not have the opportunity to hit the brakes and stop the car before defendant crossed into Devon.

Plaintiff further testified that the front end of defendant's car hit her passenger door. The impact was extremely strong. Her car lifted up on two wheels and flipped about four times, landing upside down on the north side of Devon.

Charles Parcell testified that he was waiting on United Lane to make a right turn on Devon. He observed defendant's car to his left in the inside lane. He was two car lengths from the intersection. A truck made a right turn on United Lane from Devon. Defendant's car was easing out of United Lane in front of the truck. Plaintiff's car was traveling in the lane next to the truck.

Parcell further testified that the impact occurred within a split

second. The impact occurred just in front of the truck, just as it was turning in. Prior to impact, he did not hear the screeching of tires or a horn sounding. Plaintiff's vehicle landed about 200 feet from the point of impact. He saw no skid marks before the point of impact.

Plaintiff presented testimony that she suffered severe headaches caused by the accident. Defendant disputed that the accident caused plaintiff's headaches.

At the close of the evidence, the trial court directed a verdict on plaintiff's contributory negligence in plaintiff's favor, finding that the evidence was unrebutted that plaintiff was driving within the speed limit.

On May 2, 2000, the jury returned a verdict in favor of plaintiff awarding $400,000 in damages. An order dated May 2, 2000, entered judgment on the jury verdict.

Defendant filed a posttrial motion on June 2, 2000, which was 31 days after May 2, 2000.

On June 9, 2000, defendant filed a motion to correct the record. Defendant argued that the May 2, 2000, judgment order was actually signed and filed on May 3, 2000. Defendant's attorney filed a supporting affidavit swearing that (1) the verdict was returned on May 2, 2000, at 6:15 p.m. but that judgment was not entered that day; (2) plaintiff faxed defendant a proposed judgment order on May 3, 2000; and (3) the order was executed by the court on May 3, 2000, but the clerk file-stamped the order May 2, 2000.

At the hearing on defendant's motion to correct, the trial court found that the jury reached a verdict on May 2, 2000, when the court clerk was not present, and that the judgment was entered on May 3, 2000.

On July 12, 2000, the court entered an order granting defendant's motion to correct the record. The order stated that the record was corrected to reflect that the court entered judgment on the verdict on May 3, 2000.

Defendant filed a notice of appeal after the entry of an order denying the posttrial motion and awarding costs to plaintiff.

## ANALYSIS

### I. Jurisdiction

Plaintiff argues that this court lacks jurisdiction over all issues except an issue concerning the award of costs because the judgment was entered on May 2, 2000, and defendant's posttrial motion was not filed within 30 days thereafter. Although the trial court amended the judgment order *nunc pro tunc* to May 3, 2000, which had the effect of making the posttrial motion timely, plaintiff argues that the trial

court lacked authority to do so because modifying orders *nunc pro tunc* can only be done to correct clerical errors.

■ Supreme Court Rule 272 states:

> "If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge or if a circuit court rule requires the prevailing party to submit a draft order, the clerk shall make a notation to that effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record." 137 Ill. 2d R. 272.

The purpose of Rule 272 was to resolve the difficulties that had arisen regarding the timeliness of an appeal where an oral announcement of judgment from the bench antedated the entry of a written judgment order. *West v. West*, 76 Ill. 2d 226, 233, 390 N.E.2d 880 (1979).

In *Ahn Brothers, Inc. v. Buttitta*, 143 Ill. App. 3d 688, 493 N.E.2d 384 (1986), the trial judge made an oral pronouncement that he would award certain costs. At issue in that case was whether the date of the judgment was the date of the oral pronouncement. The reviewing court pointed out the following:

> "Rule 272 provides for two alternatives: (1) a written order is required; or (2) no written order is necessary, and the judgment is entered when it becomes of record. [Citation.] Thus, under Rule 272, when an oral pronouncement of judgment occurs, the judgment becomes final at the time it is entered as of record." *Ahn Brothers*, 143 Ill. App. 3d at 690.

The court observed that no judgment was ever noted in a minute book or on a docket sheet or other record-keeping document. The court held that no judgment was entered of record in the case and that the court did not have jurisdiction to decide the case. *Ahn Brothers*, 143 Ill. App. 3d at 691.

In this case, the jury returned a verdict in the evening of May 2, 2000. At that time no clerk was present. No judgment was entered or recorded on May 2, 2000, and the trial court did not orally declare that judgment on the verdict was being entered and that no written order was required. The next day, May 3, 2000, the trial court signed the judgment order. However, the court clerk stamped May 2, 2000, as the date the judgment was entered. We find that the judgment was entered on May 3, 2000, when the judgment order was actually signed.

■ Notwithstanding the general rule that the trial court retains jurisdiction only for 30 days after entry of a final order, a court may modify its judgment *nunc pro tunc* at any time. *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 49, 713 N.E.2d 642 (1999). *Nunc pro tunc*

orders are used to correct clerical errors in written orders and thereby make final orders conform to the actual judgment of the court. *In re Marriage of Breslow*, 306 Ill. App. 3d at 49.

■ The trial court made the finding that the judgment order was actually entered on May 3, 2000. Stamping the order as of May 2, 2000, was a clerical error because, without leave of court, the clerk has no authority to file stamp documents as of any date other than the date on which they are received by the clerk (see *Ruffin v. Department of Transportation*, 101 Ill. App. 3d 728, 732, 428 N.E.2d 628 (1981) (file-stamp date on complaint had been changed to later date)). Therefore, the use of a *nunc pro tunc* order was appropriate. Because the posttrial motion was timely filed within 30 days of May 3, 2000 (735 ILCS 5/2—1202(c) (West 2000)) and the notice of appeal was timely filed within 30 days of the denial of the posttrial motion (155 Ill. 2d R. 303(a)(1) (West 2000)), this court has jurisdiction.

## II. Barring Parcell's Opinion Testimony

■ Upon written interrogatory, a party must state the subject matter on which an opinion witness is expected to testify. 177 Ill. 2d R. 213(g). A party has a duty to seasonably supplement or amend any prior answer or response whenever new or additional information subsequently becomes known to that party. 177 Ill. 2d R. 213(i). Discovery is to be completed no later than 60 days before the date that the trial court reasonably anticipates the trial will commence. 166 Ill. 2d R. 218(c).

The parties disagree over whether defendant committed a discovery violation in disclosing at trial Parcell's opinion that plaintiff's vehicle was speeding. Defendant contends that she was entitled to rely upon plaintiff's Supreme Court Rule 213(g) disclosure and that there was no deadline in Supreme Court Rule 213(i) to prevent disclosure of a supplemental opinion learned at trial. The issue need not be decided because, assuming *arguendo* that defendant did not timely disclose the opinion, we hold that the trial court's sanction of barring Parcell's opinion was an abuse of discretion.

■ Supreme Court Rule 219(c) provides for sanctions if a party does not comply with the discovery rules. 166 Ill. 2d R. 219(c). The trial court in this case chose the sanction under the rule that was applicable to this type of discovery violation. 166 Ill. 2d R. 219(c)(iv) (a witness may be barred from testifying concerning the issue to which the discovery violation relates).

The purpose of discovery sanctions is not to punish but to ensure fair discovery and a trial on the merits. *Sobczak v. Flaska*, 302 Ill. App. 3d 916, 926, 706 N.E.2d 990 (1998). Drastic sanctions should be

resorted to only when a lesser measure such as continuance would be ineffective. *People v. Beu*, 268 Ill. App. 3d 93, 98, 644 N.E.2d 27 (1994).

■ Some factors used in determining the suitability of the sanction of barring testimony are (1) surprise to the adverse party; (2) the prejudicial effect of the witness's testimony; (3) the nature of the witness's testimony; (4) the diligence of the adverse party; (5) whether an objection to the witness's testimony was timely; and (6) the good faith of the party calling the witness. *Sobczak*, 302 Ill. App. 3d at 926.

The imposition of sanctions for discovery violations will be reversed only for an abuse of discretion. *Sobczak*, 302 Ill. App. 3d at 925-26.

■ On the first factor, we note that plaintiff claimed surprise at Parcell's opinion that plaintiff was speeding.

Relevant considerations in assessing the second factor of prejudice are the strength of the undisclosed evidence, the likelihood that prior notice could have helped the opposing party discredit the evidence, the feasibility of continuance rather than a more drastic sanction, and the wilfulness of the opposing party in failing to disclose the witness. *Sobczak*, 302 Ill. App. 3d at 926.

The effect of the opinion that plaintiff was speeding would have been adverse to plaintiff because she testified that she was traveling near the speed limit. The opinion evidence was strong because it came from a disinterested witness, who was the sole testifying eyewitness.

Plaintiff argued for the first time at oral argument that she was prejudiced because, if there had been timely disclosure, she could have rebutted Parcell's opinion by presenting the testimony of the police officer, who could have testified that Parcell did not tell him that plaintiff was speeding. This argument will not be considered because it was not raised in plaintiff's brief. Points not asserted in an appellee's brief are waived and shall not be raised for the first time in oral argument. 177 Ill. 2d Rs. 341(e)(7), (f).

We also consider that plaintiff makes no argument why she would have been prejudiced by a short delay for a continuance, which would have allowed the parties to depose Parcell.

Finally, on the issue of prejudice, defendant was not wilful in the late disclosure of the opinion because defense counsel disclosed it as soon as it was discovered.

The fourth factor of the adverse party's diligence refers to diligence in seeking discovery. *Carlson v. General Motors Corp.*, 9 Ill. App. 3d 606, 619, 289 N.E.2d 439 (1972). As plaintiff knew about Parcell, there is no issue concerning plaintiff's diligence in seeking discovery of his existence. However, it is not known on this record if plaintiff was diligent in discovering Parcell's opinion of the speed of plaintiff's vehicle.

Concerning the fifth factor, there is no question that plaintiff timely objected to defendant's supplemental answer to opinion interrogatories.

Relevant to the fifth factor of bad faith is plaintiff's argument that defendant should have deposed Parcell. Defendant responds that she justifiably relied on plaintiff's interrogatory answer that stated that Parcell's opinion was that plaintiff was not exceeding the speed limit. Furthermore, defendant argues that Parcell would not speak to her attorneys prior to the trial. We do not decide whether defendant should have deposed Parcell. Because the record does not reveal when Parcell changed his opinion, it cannot be determined whether defendant would have even discovered Parcell's different opinion had she deposed him. We cannot find that defendant acted in bad faith by not discovering the opinion sooner.

Considering all the factors, we conclude that the interests of justice would have been best served by ordering a continuance so that the parties could have deposed Parcell. With Parcell's opinion testimony, and any rebuttal testimony presented by plaintiff, the jury would have been able to consider all the relevant evidence of how the accident occurred. See *Kurrack v. American District Telegraph Co.*, 252 Ill. App. 3d 885, 903-04, 625 N.E.2d 675 (1993) (court did not abuse discretion in refusing to bar testimony and instead ordering deposition of expert; opposing party was not prejudiced where she did not indicate what surprise information she was unprepared to meet).

We hold that the trial court erred in choosing the drastic sanction of barring Parcell's opinion testimony.

## III. Directed Verdict

We next address defendant's argument that the trial court erred in directing a verdict on contributory negligence.

■ A directed verdict or a judgment notwithstanding the verdict can only be entered if all of the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967).

A directed verdict is improper where there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome. *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 683 N.E.2d 508 (1992).

■ As the improperly barred opinion testimony of Parcell was evidence of plaintiff's contributory negligence, the trial court erred in

directing a verdict. See *Savage v. Martin*, 256 Ill. App. 3d 272, 280, 682 N.E.2d 606 (1993) (whether plaintiff is contributorily negligent is a question for the jury unless it is established from undisputed facts that all reasonable minds would have to conclude that plaintiff was not contributorily negligent). The trial court's errors are reversible.

Plaintiff argues that, if this court finds reversible error, the case should be remanded for a new trial only on liability. Defendant argues that the case should be remanded for a new trial on liability and damages.

An appellate court should limit the issues to be resolved on retrial only where it is plain that any error that has crept into one element of the verdict did not affect the determination of any other issue. *Thatch v. Missouri Pacific R.R. Co.*, 47 Ill. App. 3d 980, 986, 362 N.E.2d 1064 (1977). A limited retrial should not be granted if it might be prejudicial to either party. See *Glassman v. St. Joseph Hospital*, 259 Ill. App. 3d 730, 769, 631 N.E.2d 1186 (1994) (new trial on damages only is appropriate if the questions of liability and damages are so separate and distinct that such a trial was not unfair).

In light of plaintiff's testimony that she was traveling near the speed limit, Parcell's testimony that plaintiff was speeding could possibly affect a jury's assessment of the credibility of plaintiff's testimony concerning the extent of her physical injuries, her pain and suffering, and her disability. A new trial on all issues should be held.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.

Reversed and remanded.

HALL, P.J., concurs.

JUSTICE WOLFSON, specially concurring:

I concur in the result reached by the majority, but I do not agree that the defendant committed a Rule 213 discovery violation. Parcell was the plaintiff's witness. Defendant relied on the plaintiff's interrogatory answer concerning Parcell's testimony. True, Parcell would have testified in a slightly different way, but the defendant did not learn that until Parcell came to court on the day of trial. In addition, Parcell or not, I believe it was error to direct a verdict for the plaintiff on the facts heard by the jury.